ALMON, Justice.
This appeal is before this Court pursuant to the order issued in Ex parte R.B.Z., 725 So.2d 257 (Ala.1997). Pursuant to that order, the Court of Civil Appeals transferred to this Court the record that was the subject of R.B.Z. v. Warwick Development Co., 681 So.2d 566 (Ala.Civ.App.1996). Upon our inspection of that record, we have confirmed that the complaint sought an amount greater than $50,000; thus, jurisdiction over the appeal was properly in this Court. Ala.Code 1975, §§ 12-3-10 and 12-2-7; Ex parte R.B.Z., supra. We now proceed to consider the merits of the appeal.
R.B.Z. and C.Z. filed an action against a number of defendants, including Thomas Black, Carol R. Black, Warwick Development Company, and Bentwood Apartments, a partnership. During the pendency of the action, R.B.Z. and C.Z. were married, but hereinafter we shall refer to R.B.Z. as R.B., because they were not married at the time of the assault on which this action is based. The complaint alleged that R.B. and C.Z. were assaulted by Thomas Black in an apartment rented to R.B. by Bentwood Apartments. Count one alleged the assault and alleged injuries caused thereby. Count two alleged:
“Thomas Black was known by the Defendants ... or should have been known by the said Defendants to have committed rape in the past and on at least one occasion, to have been convicted of sexual assault.
“Despite this knowledge, said Defendants allowed Defendant Thomas Black access to the premises and specifically access to the apartment being leased by Plaintiff, [R. B.], ... and as a result, Plaintiffs sustained damages as set out above.”
All of the defendants except Thomas Black moved for a summary judgment. The circuit court entered a summary judgment for all of the defendants except Carol Black and Thomas Black and made that summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P.; R.B. and C.Z. appeal from that judgment. The appellees are the defendants Warwick Development Company, Bentwood Apartments, and two individuals with ownership interests in Warwick and Bentwood.
The appeal presents the question whether the plaintiffs produced evidence indicating that these defendants breached a duty to protect the plaintiffs from foreseeable harm, either generally (on the basis that an attack such as Thomas Black’s should have been foreseeable to them) or in particular (on the basis that Carol Black’s knowledge that Thomas Black had a prior rape conviction should be imputed to these defendants so as to support an inference that it was foreseeable to them that Thomas Black would commit an assault such as the one he committed on the plaintiffs).
R.B. was leasing an apartment from Bentwood Apartments. Carol Black was employed by either Warwick Development or Bentwood Apartments as the property manager of Bentwood Apartments. Carol Black did not live at the apartments. She was married to Thomas Black when she was first employed by the appellees, but they were later divorced. However, at the time of the assault, Thomas Black was living with her. Before their marriage, Thomas Black had been convicted of rape in Illinois. Carol Black knew that fact, but, according to the evidence, she did not communicate it to anyone at her place of employment, i.e., the business offices of Warwick Development, Bentwood Apartments, and the other defendants.
*263 On the night of the assault, R.B. and C.Z. returned to R.B.’s apartment about 1 a.m. A stranger was in the apartment; he assaulted R.B. and C.Z. and raped R.B. Later, at a police lineup, R.B. and C.Z. identified Thomas Black as the assailant. The evidence shows that Carol Black and others had master keys, but there is no evidence that any employee of the appellees ever gave Thomas Black access to a master key or a key to R.B.’s apartment. The evidence might support an inference that on the night of the attack, while Carol Black was sleeping, Thomas Black surreptitiously took her key from her purse, which was in the kitchen, but there is no evidence that she gave him permission to do so or that she knew of his taking the key.
The assault occurred on a Friday night. The next day, Saturday, Thomas Black accompanied Carol Black to the apartments to help her change a lock in an unoccupied apartment. By deposition she testified that he did not have access to the keys to that apartment or to any other apartment. The record also contains evidence indicating that on a day in February, before the assault in April, Thomas Black accompanied the resident manager, Dale Meisner, into R. B.’s apartment. Both Carol Black and Dale Meisner testified by deposition that Thomas Black did not gain access to a master key on that occasion, and the evidence would not support a finding that he did gain such access.
This Court has adhered firmly to the rule that “absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.” Ex parte McRae’s of Alabama, Inc., 703 So.2d 351, 351 (Ala.1997), quoting Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala.1986), and citing 26 other eases applying the rule.
The facts of this case do not support an imposition of liability on the appellees for the criminal act alleged by the plaintiffs. First, there is no evidence that the appellees themselves had any knowledge of Thomas Black’s rape conviction so as to make it foreseeable to them that he would commit such a crime.
In actions by which a victim of a criminal assault seeks to recover from a premises owner for some alleged failure to make the premises safe, the question often turns on the foreseeability of the assault. The Court’s statement in Henley v. Pizitz Realty Co., 456 So.2d 272, 277 (Ala.1984), is directly applicable here:
“[T]here was an absence of evidence that the defendant either knew or should have known of a likelihood of conduct on the part of a third person such as the assailant which would endanger the invitee. Thus, under the facts of this case, this assault and the rape were not reasonably foreseeable.”
(Emphasis in original.) To like effect are decisions such as Saccuzzo v. Krystal Co., 646 So.2d 595 (Ala.1994); Bailey v. Bruno’s, Inc., 561 So.2d 509 (Ala.1990); Law v. Omelette Shop, Inc., 481 So.2d 370 (Ala.1985); and Ortell v. Spencer Cos., 477 So.2d 299 (Ala.1985).
In the few cases in which this Court has held that a fact question was presented on such a claim, there was evidence of particularized circumstances from which a jury could find that the defendant had a heightened duty to protect and had breached that duty. In Young v. Huntsville Hospital, 595 So.2d 1386 (Ala.1992), the hospital was held to have a duty to protect an anesthetized or sedated patient; the assailant was a trespasser who had previously been caught trespassing and had been warned. In Thetford v. City of Clanton, 605 So.2d 835 (Ala.1992), the motel employees knew that the wife had been beaten by her husband and had checked into the motel to escape him; yet a motel employee cut the chain on the wife’s door to let the husband in. In Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208 (Ala.1988), the operators of the farmers’ market were aware of the “growing rancor” between two groups of tenants, but they did not replace the guard for the area when he left to guard another area.
L.M.S. v. Angeles Corp., 621 So.2d 246, 247 (Ala.1993), held that notice to an apartment complex owner that L.M.S.’s window lock was not working was “sufficient to create a question of fact as to whether Forest River *264 knew of a condition that could foreseeably result in the attack on L.M.S.” However, the evidence here does not support such a finding of foreseeability. Although the plaintiffs attempted to show that the appellees did not institute sufficient measures to protect the master keys to the apartment complex, there was no showing of any prior misuse of a master key. Furthermore, the evidence of possession of master keys by persons other than Carol Black did not provide any evidence of proximate cause of the assault in this case, because the only evidence suggesting that Thomas Black would have had access to a master key was the evidence that Carol Black’s key was in her purse and that he could have stolen it from her purse. One could not, acting on the theory that someone might steal a key from Carol Black’s purse and use it to unlawfully gain entry to an apartment and assault the tenant, infer that the appellees’ allowing Carol Black to take a master key home with her was a breach of duty. Such an inference is too far extended to support a finding of the type of foreseeability that is necessary to impose liability for the criminal acts of third parties.
Thus, without evidence that the appellees knew Thomas Black had been convicted of rape, there is no showing that any negligence by the appellees proximately caused the plaintiffs’ injuries.
Nor can Carol Black’s knowledge be imputed to the appellees so as to support a finding that it was foreseeable to them that Thomas Black would commit such a crime as the one alleged.
“[K]nowledge acquired by an agent prior to the commencement of his agency does not constitute notice to [a] subsequent principal.... The facts of which the agent has notice must be within the scope of the agency, so that it becomes his duty to act upon them or to communicate to his principal.”
Florence v. Carr, 226 Ala. 654, 655-56, 148 So. 148, 148-49 (1933); Lawrence v. Tennessee Valley Bank, 224 Ala. 692, 141 So. 664 (1932).
“Information to an agent is not notice to the principal when given to the agent upon a casual occasion at a time when he is not engaged in business for his principal and no act or transaction of the agency is then pending.”
Sullivan v. Alabama Power Co., 246 Ala. 262, 270, 20 So.2d 224 (1944). Carol Black’s knowledge of Thomas Black’s rape conviction, which she gained before she began working for the appellees and which was gained outside the scope of her agency, was not notice to the appellees of that conviction. Therefore, no liability can be imposed on these appellees on the basis of her knowledge of the conviction.
The evidence before us would not support a finding of “particularized circumstances” showing a likelihood of criminal acts that the appellees reasonably could have prevented by the use of due care. The plaintiffs made no showing that it was, or should have been, foreseeable to the appellees that an assault such as the one alleged was likely to occur. The general duty of keeping the entrances to a leased premises secure does not go so far as to require an owner to predict that its property manager’s master key will be stolen from her purse in her kitchen while she sleeps and will be used to burglarize an apartment and commit an assault therein. The circuit court properly entered the summary judgment for the appellees.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and SEE, JJ., concur.
COOK, J., concurs in the result.